IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ZOSTAVAX (ZOSTER VACCINE LIVE) PRODUCTS LIABILITY LITIGATION | : | MDL No. 2848 |
| THIS DOCUMENT RELATES TO: NORMA STANTON v. MERCK & CO., INC., et al. | : | CIVIL ACTION NO. 18-20057 |
| SANDRA MORRIS v. MERCK & CO., INC., et al. | : | CIVIL ACTION NO. 18-20059 |

<u>MEMORANDUM IN SUPPORT OF PRETRIAL ORDER NO. 53</u>

Bartle, J.                                   January 7, 2019

Plaintiffs Norma Stanton and Sandra Morris, in separate actions, have sued defendants Merck & Co., Inc., Merck Sharp & Dohme Corp. (both defendants hereinafter "Merck") and McKesson Corp. for personal injuries arising from their inoculation with Merck's drug Zostavax for the prevention of shingles. Both actions, in which plaintiffs are represented by the same attorney, were originally filed in the Circuit Court of the Thirteenth Judicial Circuit for Hillsborough County, Florida and timely removed based on diversity of citizenship to the United States District Court for the Middle District of Florida.

Merck has now moved to dismiss these actions under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. McKesson has not filed such a motion.

I

According to Stanton's First Amended Complaint, she was at all times relevant a resident of The Villages, Florida. In or about July 2012, she was inoculated with the Zostavax vaccine at Island Health Care in Edgartown, Massachusetts. Some four years later, on or about July 5, 2016, she was diagnosed with shingles by her physician in her hometown in Florida.

As set forth in her amended complaint, Morris was at all times relevant a resident of Marathon, Florida. In or about July 2011, she was inoculated with the Zostavax vaccine by Valerie Linzey, N.P.C. in Norwalk, Connecticut for routine adult health maintenance and for the long-term prevention of adult shingles. In or about July 2011, Linzey diagnosed Morris with shingles in Connecticut. Plaintiffs further allege in their amended complaints that the defendants continuously have sold and distributed Zostavax in Florida during all relevant times.

The attorney for Stanton and Morris has also filed a declaration in which she states that Stanton "at all relevant times to this action" was a resident of the Villages, Florida." The declarant further affirms "Ms. Stanton suffered her injuries in which damages are claimed in Florida." The statement about

-2-

Stanton's residence is not contested. However, we will not consider the statement of her attorney about the place where Stanton suffered injuries.[1] Merck correctly challenges this statement as inadmissible hearsay. United Technologies Corp. v. Mozer, 556 F.3d 1260, 1274 (11th Cir. 2009); Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009).

The attorney's declaration also references Morris. It reiterates her amended complaint that at all times relevant Morris has resided in Marathon, Florida. It further states that Morris has advised the law firm that "she spends her time in Connecticut during the 'summer' and otherwise resides at her home in Florida." According to the declaration, Morris confirmed to the law firm that "she received Zostavax in Connecticut and was first diagnosed with shingles in Connecticut as alleged in the complaint."

Merck & Co., Inc. and Merck Sharp & Dohme Corp. are incorporated in and have their principal places of business in New Jersey. McKesson Corp., a marketer and distributor of Zostavax, is incorporated in Delaware with its principal place of business in California. In support of the motions to dismiss, Merck has filed two declarations. Merck does not own

---

1. We read the statement as saying plaintiff suffered her injuries in Florida although it could be read as saying only that she is making her damage claim in Florida.

or lease any property in Florida. It does own and lease property in New Jersey and Pennsylvania where it employs over 14,000 people. The research and development of Zostavax occurred in Pennsylvania, while decisions concerning warnings accompanying Zostavax as well as clinical study strategy, labeling, marketing, sales strategies, and regulatory approvals took place in both Pennsylvania and New Jersey. Zostavax is currently manufactured in Pennsylvania and shipped for use from Merck's facility in North Carolina. Merck has never manufactured Zostavax in Florida.

When a defendant contests the court's personal jurisdiction over it, the burden rests with the plaintiff to establish personal jurisdiction. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009); United Technologies Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). For present purposes, Merck does not dispute any jurisdictional facts asserted by the plaintiffs through their attorney's declaration or otherwise except for the part of the attorney's declaration noted above which states that Stanton's place of injury was Florida. The court will disregard this hearsay. For their part, plaintiffs do not challenge Merck's declarations.

II

To establish that a court may exercise personal jurisdiction, the plaintiffs must overcome two hurdles. First,

-4-

they must demonstrate that the forum's long-arm statute reaches the defendants.² Plaintiffs do not contend that personal jurisdiction exists because of substantial business activity Merck conducts in Florida. See Fla. Stat. § 48.193(2). Instead, plaintiffs focus on several other sections of Florida's long-arm statute which provide for personal jurisdiction over an out-of-state defendant:

> (1)(a)  A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for <u>any cause of action arising from any of the following acts</u>:
>
>     2. Committing a tortious act within this state.
>
>     . . .
>
>     6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
>         a. The defendant was engaged in solicitation or service activities within this state; or
>
>         b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the

---

2. In this Multidistrict Litigation, we apply the law of the transferor court, that is the law of Florida, to the issue of personal jurisdiction. See Van Dusen v. Barrack, 376 U.S. 612, 626-643 (1964).

-5-

>                     ordinary course of commerce, trade or
>                     use.
>
> Fla. Stat. §48.193(1)(a)(2) and (1)(a)(6)(a) and (b)

Under this statute, the court has personal jurisdiction over the defendant if a plaintiff's claim is one "arising from" a tortious act committed within Florida under § 48.193(1)(a)(2). The term "arising from" means that the place of injury be within Florida. Hinkle v. Continental Motors Inc., 268 F. Supp. 3d 1312, 1322 (M.D. Fla. 2017). The statute also allows a court to exercise personal jurisdiction under §48.193(1)(a)(6)(a) and (b) where actions or acts committed outside the state directly cause injury within the state. See Horizon Aggressive Growth LP v. Rothstein-Kass, 421 F.3d 1162, 1168 (11th Cir. 2005); Wendt v. Horowitz, 822 So. 2d 1252 (Fla. 2002); Blumberg v. Steve Weiss & Co., Inc., 922 So. 2d 361, 364 (Fla. Dist. Ct. App. 2006).

The plaintiffs rely on Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996) in support of their argument that personal jurisdiction exists under the Florida long-arm statute. In that case, defendants resided and were licensed to practice law in Michigan. They provided estate planning services to an individual when he resided in Michigan and continued to do so after he moved to Florida. After his death, his estate sued defendants in Florida for negligence and breach

of contract as a result of what it deemed to be an excessive estate tax liability. The Court of Appeals upheld personal jurisdiction since the negligence of defendants caused damage to the estate in Florida.

Robinson does not help plaintiffs. In contrast to Robinson where the defendants' out-of-state acts caused direct harm in Florida, the out-of-state acts of Merck caused injury to plaintiffs out-of-state and not in Florida.

Hinkle, on the other hand, directly supports Merck's position that personal jurisdiction over it is lacking under the Florida long-arm statute. In Hinkle, the plaintiffs had sustained personal injuries when a small aircraft in which they were flying crashed in South Carolina after having departed from an airport in Florida. The pilot, Robert Hinkle, had purchased the aircraft from a Minnesota corporation through a Virginia salesperson and had it delivered in Minnesota. While Hinkle had ordered the aircraft, it was delivered to a company he owned. The lawsuit, based on diversity of citizenship, was filed by Hinkle and others, all residents of Florida, against a number of defendants in the United States District Court for the Middle District of Florida. None of the defendants was a citizen of Florida, and none conducted sufficiently substantial business there. The court held that personal jurisdiction did not exist under the Florida long-arm statute.

Here the plaintiffs, Florida residents, state in their amended complaints that the tortious acts, that is the injections of the faulty Zostavax vaccine, occurred in Massachusetts and Connecticut respectively. As noted above, plaintiffs do not rely on Merck's general business activity in Florida. Consequently, as in Hinkle, the Florida long-arm statute does not provide a basis for the court to exercise personal jurisdiction over the claims of the plaintiffs since Merck did not cause any injury to them in Florida, either from without or from within the state. The circumstances here and in Hinkle are materially different from those in the cases upholding personal jurisdiction over a defendant where defendant's telephonic or written communications from out of state directly caused harm within the state. See, e.g., Robinson, 74 F.3d 253, Wendt, 822 So. 2d 1252.

III

Even if the requirements of the Florida long-arm statute were met, plaintiffs must overcome a second hurdle. They must establish that personal jurisdiction is proper under the Due Process Clause of the Fourteenth Amendment. Due Process places constitutional restrictions on the power of a state court to exercise personal jurisdiction over a defendant. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 918 (2011). Personal jurisdiction can be exercised based on what is

-8-

known as general jurisdiction or specific jurisdiction. Bristol-Myers Squibb v. Superior Court of California, 137 S.Ct. 1773, 1779-80 (2017). The Supreme Court has held that a state court's general jurisdiction over a corporation exists only where the state is the defendant's home, that is, the state of its incorporation, or the state of its principal place of business or "in an exceptional case" where "its operations may be so substantial and of such a nature as to render the corporation at home in that state." Id., Daimler A.G. v. Bauman, 571 U.S. 117, 137-39 n. 19 (2014); see also BNSF Railway Co. v. Tyrrell, 137 S.Ct. 1549, 1559 (2017). When general jurisdiction exists, a state court may hear all claims against the corporation, regardless of where the claims arose. Plaintiffs do not rely on general jurisdiction, and it need not concern us further.

Plaintiffs instead argue the existence of specific jurisdiction, the contours of which the Supreme Court has recently outlined in Bristol-Myers, 137 S.Ct. 1773. For a state court to exercise specific jurisdiction over a defendant, "the suit must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." Id. at 1780. The Court explained that "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore

-9-

subject to the state's regulation.'" Id. The principles of specific jurisdiction concern the proper bounds of state sovereignty under the Fourteenth Amendment's Due Process Clause. The primary focus in making this determination is the relationship of the defendant to the forum state and the interest of the forum in applying its law to the controversy. Nonetheless, even if inconvenience to the defendant is minimal and a state has a strong interest in the matter, the limits on state sovereignty may still preclude a state from exercising specific personal jurisdiction. Id. at 1779-81.

The relevant activity or occurrence with respect to Stanton took place in Edgartown, Massachusetts when she received the Zostavax injection. The relevant activity or occurrence with respect to Morris took place in Connecticut where she was injected with Zostavax. The torts which allegedly caused their injuries happened in places other than Florida. While plaintiffs were long-time residents of Florida, Merck did nothing to and had no interaction with either of them in that state. Merck was not at home in Florida, and plaintiffs' injuries did not arise out of and were not related to any contact it had with Florida, regardless of what Merck's other activities in the state may have been. Stanton's emphasis on the fact that she was diagnosed with shingles in Florida is misplaced. For purposes of personal jurisdiction, we must look

to the place where the injury occurred, not to the place where it was diagnosed.

Under Bristol-Myers, Florida's power does not extend to Merck in these actions even if Florida would be a convenient place for plaintiffs to sue and would not be inconvenient or burdensome to large corporations such as defendants. The Florida state court, where the actions were initiated, cannot exercise personal jurisdiction over Merck under the Due Process Clause of the Fourteenth Amendment. See Walden v. Fiore, 571 U.S 277 (2014); Hinkle, 268 F. Supp. 3d 1312. Because the Florida state court does not have personal jurisdiction, a federal court to which the case is removed on the basis of diversity of citizenship does not have personal jurisdiction. Diamond Crystal Brands v. Food Movers International Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010); see O'Connor v. Sandy Lane Hotel Co., Ltd. 496 F.3d 312, 316 (3d Cir. 2007).

IV

Plaintiffs ask in their opposing brief that the court transfer these actions to a proper forum under 28 U.S.C. § 1631 if it rules that the Florida state court cannot exercise personal jurisdiction.

That statute provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review

of administrative action, is noticed for or
filed with such a court and that court finds
that there is a want of jurisdiction, the
court shall, if it is in the interest of
justice, transfer such action or appeal to
any other such court in which the action or
appeal could have been brought at the time
it was filed or noticed, and the action or
appeal shall proceed as it had been filed in
or noticed for the court to which it is
transferred on the date upon which it was
actually filed in or noticed for the court
from which it is transferred.

"Want of jurisdiction" as used in this statute means want of either subject matter jurisdiction or of personal jurisdiction. Chavez v. Dole Food Co., Inc., 836 F.3d 205, 224 n. 100 (3d Cir. 2016).

These actions are part of MDL 2848 (In Re Zostavax (Zostavax Vaccine Live) Products Liability Litigation). The Supreme Court held in Lexecon v. Millberg Weiss Bershad Hynes & Lerach, 523 U.S. 43 (1998), that 28 U.S.C § 1407 forbids a transferee court in a multidistrict litigation from transferring an action to itself under 28 U.S.C. § 1404(a).[3] Here the

---

3. 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses,
> in the interest of justice, a district court
> may transfer any civil action to any other
> district or division where it might have been
> brought or to any district or division to which
> all parties have consented.

This provision applies where venue was proper in the court where the action was initially filed. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).

plaintiffs seek to have these actions transferred to a district other than the place where this court, that is the transferee court, sits. Nonetheless, the analysis of § 1407 in Lexecon, in our view, reaches the present situation and precludes this court from transferring a case to any other district, whether under § 1404(a), § 1406(a)[4] or § 1631. In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig., 190 F. Supp. 3d 1100, 1106 (S.D. Fla. 2016); Bartel v. Various Defendants, 965 F. Supp. 2d 612, 622 (E.D. Pa. 2013).

The MDL panel's recent decision in In Re: Biomet M2A Magnum Hip Implant Products Liability Litigation, 2018 WL 6426830 (Dec. 6, 2018) gives further support to the position that this court does not have authority under § 1407 to transfer these actions under § 1631. That decision involved motions before the MDL panel to reconsider an order that conditionally remanded certain actions to their respective transferor courts. The motions for reconsideration, by agreement of the parties, sought to have the MDL panel transfer the cases to other courts

---

4. 28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

where the venue was purportedly proper. The MDL panel held that under § 1407 it must remand to the transferor courts and that it has no ability under § 1407 to redirect the remand to other courts. Instead, it would be up to the transferor courts on remand to decide the issue of transfer. While <u>Biomet</u> deals with the power of the MDL panel, its analysis logically precludes transferee courts from transferring cases to other districts.

Even if this court has the power to transfer an action under § 1631, neither plaintiff identifies or suggests a proper forum where her action could or should be transferred "in the interest of justice." The court has determined that personal jurisdiction is lacking as to only two of the three defendants. McKesson has not filed a motion to dismiss under Rule 12(b)(2). Moreover, the Merck defendants have a different home state than McKesson so that there does not appear to be any one forum where general jurisdiction could be exercised over all defendants. As to specific jurisdiction, there is nothing in the record pointing to any ties between causation of plaintiffs' injuries in Massachusetts and Connecticut and any activity of McKesson in those states. In sum, the court is not able to determine, without a suggestion of the plaintiffs and the presentation of the appropriate jurisdictional facts, in what district or districts, if any, either of these actions could have been brought at the time they were filed.

V

Accordingly, these actions insofar as they are against Merck will be dismissed without prejudice for lack of personal jurisdiction under Rule 12(b)2) of the Federal Rules of Civil Procedure.